## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### PARKERSBURG DIVISION

**JEROME M. BLANEY**,

     **Petitioner,**

**v.**                                  **Case No.: 6:13-cv-8538**

**DAVID BALLARD, Warden,**
**Mount Olive Correctional Complex**

     **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court are Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2), and Respondent's Motion for Summary Judgment. (ECF No. 8). This case is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). As a preliminary matter, the undersigned notes that the record before the court is well-developed and provides a sufficient basis upon which to resolve this case without need for an evidentiary hearing. *See* Rule 8, Rules Governing Section 2254 Cases.

After thorough consideration of the record, the undersigned conclusively **FINDS** that (1) there are no *material* factual issues in dispute and (2) Petitioner is not entitled to the relief requested. Therefore, for the reasons that follow, the undersigned respectfully **RECOMMENDS** that the District Court **GRANT** Respondent's Motion for Summary Judgment; **DENY** Petitioner's Petition for a Writ of Habeas Corpus; and

**DISMISS** this case from the docket of the court.

## I.    Relevant Facts and Procedural History

Between 2001 and 2003, Petitioner Jerome M. Blaney ("Blaney") worked as a teacher's aide at Williamstown High School, where he was responsible for one specific special needs student throughout the entirety of the school day. (ECF No. 22-1 at 336-37). During that time, Blaney interacted with other students, both in the classroom, outside during lunch duty, and while riding the school bus with the individual student in his charge. (*Id.* at 336-49).

On May 16, 2003, Blaney was named in a six count indictment in Wood County Circuit Court, *State v. Blaney*, 03-F-99-R, which included two counts of Sexual Abuse in the Third Degree, two counts of Sexual Abuse by a Custodian, one count of Sexual Abuse in the First Degree, and one count of Abduction. (ECF No. 8-1). Attorney Joseph P. Albright, Jr. ("Albright") was appointed to represent Blaney. Prior to trial, the trial court dismissed Counts 1 through 5 of the indictment as facially insufficient pursuant to *State ex. Rel. Day v. Silver*, 556 S.E.2d 820, 822 (W. Va. 2001), and the State subsequently chose not to proceed on the remaining count, instead opting to dismiss the indictment and present the evidence to another grand jury. (ECF No. 9 at 2-3).

On August 25, 2003, a Wood County grand jury returned a nineteen count indictment against Blaney, *State v. Blaney*, 03-F-161W, which included nine counts of Sexual Abuse in the Third Degree, nine counts of Sexual Abuse by a Custodian, and one count of Attempted Abuse in the Third Degree, involving two victims, both of whom were students at the school where Blaney worked, though not the student in his specific care. (ECF No. 8-3). Blaney petitioned the West Virginia Supreme Court of Appeals ("WVSC") for a writ of prohibition and/or mandamus, arguing that the second

indictment violated West Virginia Rule of Criminal Procedure 8(a)(2) regarding the mandatory joinder of charges, (ECF No. 8-2), but on July 19, 2004, the WVSC denied Blaney's mandamus petition. (ECF No. 8-5).

Prior to trial, three misdemeanor counts for Sexual Abuse in the Third Degree were dismissed due to expiration of the statute of limitations. (ECF No. 8-10 at 3). On April 12, 2005, a jury trial began on the remaining counts. (ECF No. 22-1). According to the trial testimony of the first victim (the "Victim"), Blaney had sexual contact with her on multiple occasions at four different locations, including on the school bus, in an empty classroom at school, on the school tennis courts, and at her home. (*Id.* at 149-79). The other named victim (the "Second Victim") testified that Blaney touched her vaginal area on several occasions when she was standing near him in a classroom at school. (*Id.* at 255-65). Blaney also testified at trial, denying all of the allegations. (*Id.* at 335-57). At the close of the evidence, three additional misdemeanor counts of Sexual Abuse in the Third Degree were dismissed pursuant to the statute of limitations. (*Id.* at 329).

On April 15, 2005, the jury returned guilty verdicts on five counts of Sexual Abuse by a Custodian, two counts of Sexual Abuse in the Third Degree, and one count of Attempted Sexual Abuse in the Third Degree, all with respect to the Victim. (*Id.* at 511-13). Blaney was acquitted of the remaining counts against him, which included two counts involving the Victim and three counts involving the Second Victim. (ECF No. 22-1 at 513-14). On July 5, 2005, Blaney was sentenced to three consecutive terms of 90 days imprisonment for each of the Third Degree Sexual Abuse and Attempted Third Degree Sexual Abuse counts; three consecutive terms of 10 to 20 years imprisonment for three of the Sexual Abuse by a Custodian counts, to be served consecutive to the 90-day terms; and two terms of 10 to 20 years imprisonment for the remaining two counts

of Sexual Abuse by a Custodian, to run concurrently with the other 10-to-20-year terms. (ECF Nos. 9 at 4; 20 at 2).

Blaney petitioned the WVSC for an appeal, which was denied on October 4, 2006. (ECF No. 8-6). Thereafter, Blaney petitioned the state circuit court for a writ of habeas corpus. (ECF Nos. 8-7, 8-8, 8-9, 8-10, 8-12). An evidentiary hearing held on September 15, 2010. (ECF No. 8-11). On September 20, 2011, the state circuit court denied Blaney's petition for habeas relief. (ECF No. 8-13 at 2-46). Blaney appealed the circuit court's decision, (ECF No. 8-14), but on February 11, 2013, the WVSC affirmed the order denying habeas relief, and "adopt[ed] and incorporate[d] the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal." (ECF No. 8-16).

On April 22, 2013, Blaney filed the instant action petitioning for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 2). On July 2, 2013, the Respondent filed a motion for summary judgment, (ECF No. 8), and Blaney filed a response in opposition to the motion on August 8, 2013. (ECF No. 20).[1]

## II.   Petitioner's Claims

Blaney asserts the following six grounds in support of his § 2254 habeas petition:

1.      In grounds one and four of his petition, Blaney argues that he did not qualify as a "custodian" under West Virginia law, and therefore his convictions for "Sexual Abuse by a Custodian" were improper. (ECF No. 2 at 3-4, 8-9).

2.      In ground two, Blaney claims that the jury was improperly coerced into

---

[1] Respondent recently moved to supplement the record with the trial transcript and a copy of Blaney's petition for appeal of the jury verdict. (ECF No. 22). The undersigned hereby **GRANTS** Respondent's motion to supplement the record and has considered the additional information in preparing the findings of fact and recommendations set forth herein.

reaching a unanimous verdict following the trial court's issuance of a modified *Allen* instruction. (*Id.* at 5).

3.      For his third ground, Blaney contends that the jury's guilty verdicts were against the weight of the evidence because the allegations were "uncorroborated, inconsistent, and the result of deception by an investigator." (*Id.* at 7).

4.      Blaney argues in ground five that his second indictment violated the mandatory joinder provisions of W. Va. R. Crim. P. 8(a)(2), and that he was prejudiced by the joinder of weak charges relating to the Second Victim. (*Id.* at 9-10).

5.      Finally, as his sixth ground, Blaney assigns multiple errors to his defense counsel's representation, which he alleges deprived him of meaningful assistance of counsel. (*Id.* at 10-11).

## III.   <u>Standards of Review</u>

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standard set forth in § 2254(d), which provides that the habeas petition of a person in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

> (1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). Moreover, the factual determinations made by the state court are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Thus, when reviewing a petition, the federal court uses a "highly deferential lens." *DeCastro v. Branker,* 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have separate and independent meanings. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams,* 529 U.S. at 405) (internal quotations omitted). A habeas writ may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id.* at 300-01 (internal marks omitted).

Accordingly, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under this standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather the application must also be

unreasonable." *Williams*, 529 U.S. at 365. Moreover, as discussed in greater detail in Part IV.E, *infra,* the standard of review under the § 2254 unreasonable application clause in the context of an ineffective assistance of counsel claim is considerably more focused and emphasizes the deference that must be given to a state court's determinations. *See Harrington v. Richter*, 131 S.Ct. 770, 778, 178 L.Ed.2d 624 (2011).

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) (quoting *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991)). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller &, Mary Kay Kane, *Federal Practice and Procedure*: *Civil* § 2725 (3d ed. 2005). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Consequently, motions for summary judgment impose a heavy burden on the moving party; for, it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990).

Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50). Here, the respondent has moved for summary judgment. (ECF No. 8). Although Blaney opposes summary judgment, he does appear to concede that the habeas corpus statute "seems to require the court to treat the petition itself as the equivalent of a petitioner-initiated summary judgment motion." (ECF No. 20 at 4). With these standards in mind, the undersigned considers each ground raised by Blaney.

## IV.   Exhaustion of State Remedies

Before evaluating the substantive merits of Blaney's claims, the undersigned must address Respondent's contention that grounds one and five of the habeas petition should be dismissed for lack of exhaustion. As a prerequisite to filing a § 2254 action, a habeas petitioner must exhaust his state remedies. 28 U.S.C. § 2254(b)(1)(A). Exhaustion of state remedies requires the petitioner to fairly present the federal constitutional issues to the state courts and allow them "one full opportunity" to resolve the issues. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Considering that the purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Picard*, 404 U.S. at 275 (internal quotations omitted), fair presentation demands that the state courts be fully informed of "both the operative facts and the controlling legal principles."

*Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews v. Evans*, 105 F.3d 907, 911 (4th Cir. 1997). While it is unnecessary to cite "book and verse on the federal constitution," the petitioner must first present the "substance of a federal habeas corpus claim" to the state courts. *Picard*, 404 U.S. at 277-78. Thus, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (internal citations omitted).

In West Virginia, exhaustion is accomplished in one of three ways; by (1) presenting the federal constitutional issues directly to the West Virginia Supreme Court through an appeal of the conviction or sentence; (2) filing a petition for a writ of habeas corpus under the West Virginia Supreme Court's original jurisdiction and receiving a dismissal with prejudice[2]; or (3) filing a petition for a writ of habeas corpus in the appropriate circuit court followed by an appeal of the judgment to the West Virginia Supreme Court, if the result is adverse. *Moore v. Kirby*, 879 F.Supp. 592, 593 (S.D.W.V. 1995); *Bayerle v. Godwin*, 825 F.Supp. 113, 114-15 (N.D.W.V. 1993); *McDaniel v. Holland*, 631 F.Supp. 1544, 1545-46 (S.D.W.V. 1986); *see also Gardner v. Plumley*, No. 2:12-cv-03386, 2013 WL 5999041, at *5 (S.D.W.V. Nov. 12, 2013).

In general, the district court may not review a federal habeas petition unless there has been "total exhaustion" of the presenting issues to the state court. *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Thus, when a petitioner has failed to exhaust his state court remedies, a federal habeas petition should be dismissed. *See Preiser v. Rodriguez*, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In the

---

[2] However, an original jurisdiction petition that is denied without any indication that the denial was with prejudice, following a determination on the merits, does not exhaust the prisoner's state court remedies. *See Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990) (abrogated on other grounds).

event that a federal habeas petitioner presents a mixed petition consisting of both exhausted and unexhausted claims, the district court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in state court,[3] or (3) allow the petitioner to remove the unexhausted claims and proceed with the exhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277-78, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). The court may also deny the unexhausted claims on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(3); *see also White v. Keller*, No. 1:10-CV-841, 2013 WL 791008, at *5 (M.D.N.C. Mar. 4, 2013).

### 1. *Ground One—Sexual Abuse by a Custodian*

Blaney claims that the trial court did not require the prosecutor to prove beyond a reasonable doubt that Blaney was the Victim's custodian. He argues that in the absence of such proof, his convictions on charges of Sexual Abuse by a Custodian violate his right to due process of law. Respondent insists that Blaney has failed to exhaust this ground for relief, contending that Blaney is now attempting to "federalize" his state claim by "throwing phrases such as 'due process' into his" petition. (ECF No. 9 at 17). Respondent argues that Blaney raised the "custodian" issue on direct appeal and to the habeas court, but only as a matter of "statutory interpretation rooted in state law," and not as a claim with federal underpinnings. (*Id.* at 16-18).

To the contrary, the undersigned finds that throughout his state habeas proceedings, Blaney did attempt, however inartfully, to raise due process claims of error

---

[3] However, stay and abeyance is only appropriate in limited circumstances in which the district court determines that "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278; *Wright v. Keller*, No. 3:11-cv-341-RJC, 2011 WL 5827236, at *2 (W.D.N.C. Nov. 18, 2011) (declining to order stay and abeyance); *Abido v. Ballard*, No. 2:08-cv-00341, 2009 WL 772918, at *2 n.2 (S.D.W.V. Mar. 18, 2009) (same); *Wilson v. Humphey*, No. 5:05-cv-00795, 2006 WL 643154, at *3 (S.D.W.V. Mar. 10, 2006) (same).

relating to the interpretation of the term "custodian." In his state habeas petitions, Blaney argued (1) that his convictions on counts two, four, and six were "invalid where clearly the legislature has defined by code, that a teacher riding on a school bus, is <u>not</u> the custodian of the children which denied the defendant due process of law and a properly instructed jury in direct violation of ... <u>United States Constitution, Amendment 5, 6, and 14</u>." (ECF No. 8-7 at 13 (emphasis in original)); and (2) that he was "denied his constitutional right to a fair and impartial jury as secured by the Sixth and Fourteenth Amendments to the Constitution of the U.S.A. ... when the Court failed to give an instruction on 'abuse' and gave an overinclusive definition of 'custodian.'" (ECF No. 8-8 at 12). On state habeas appeal, Blaney claimed that the state habeas court erred in determining that his convictions "were not invalid and in contravention of ... Amendment 5, 6, and 14 of the United States Constitution, in this instance where the State Legislature clearly defined by W.Va. Code § 18A-5-1(a) that a teacher (and by extension a teacher's aid[e]) is not the custodian of children while they are riding on a school bus." (ECF No. 8-14 at 5). The Respondent acknowledges as much elsewhere in his Memorandum. (ECF No. 9 at 6, 9).

Presently, Blaney contends that "the decisions of the state habeas court and the state supreme court are contrary to clearly established federal constitutional law when the state courts determined that [his] convictions ... are not invalid or in contravention [of] the Fifth, Sixth, and 14th Amendments to the Constitution of the U.S.A." when "State law explicitly mandates that the driver of the school bus is the sole custodian of all students being transported on his or her bus." (ECF No. 2 at 8). In a similar vein, Blaney argues that his due process rights were violated because the State was not required to prove beyond a reasonable doubt the essential element of his status as a

"custodian" in light of W. Va. Code § 18-5A-1(a). (*Id.* at 3-4). Although his state habeas claims were not identical to his federal claims, the substance of Blaney's argument, that he was denied due process of law under his construction of the term "custodian" as it relates to the relevant state education statute, was fairly presented in his state habeas proceedings before the circuit court and on appeal to the WVSC. *See Ramdass v. Angelone*, 187 F.3d 396, 409 (4th Cir. 1999) ("The standard for state court exhaustion prior to filing a federal habeas petition is not ... whether a petitioner presented the 'identical' claim in state court but rather whether he 'fairly presented' his federal claim to the state court.").

Accordingly, the undersigned **PROPOSES** that the District Court **FIND** that Blaney has exhausted his due process claims relating to the definition of "custodian" that was used to support his convictions for Sexual Abuse by a Custodian.

### 2. *Ground Five—Joinder of Charges*

Blaney argues that his constitutional rights were violated "when the State secured a second indictment alleging nineteen criminal acts after the Circuit Court had dismissed the first indictment." (ECF No. 2 at 9). Blaney further contends that he was "prejudiced by the joinder of weak charges" alleged by the Second Victim, which he believes were added solely to bolster the charges involving the primary Victim. (*Id.* at 9-10). Respondent asserts that Blaney failed to exhaust his claims regarding the improper "joinder" of charges. (ECF No. 9 at 24). The undersigned agrees with the Respondent.

It does not appear that Blaney has ever argued, on direct appeal or in state habeas proceedings, that the State's second indictment against him served to deprive him of any constitutional rights. Following his second grand jury indictment, Blaney petitioned the WVSC for a Writ of Mandamus, arguing that the second indictment

violated the mandatory joinder provisions contained in Rule 8 of the West Virginia Rules of Criminal Procedure. (ECF No. 8-2). However, "[i]t is well settled that filing petitions for extraordinary writs before the Supreme Court of Appeals of West Virginia will not satisfy exhaustion" for the purposes of § 2254. *Eagle v. Parole Bd. of West Virginia*, No. 2:11-cv-8, 2013 WL 1681848, at *2 (N.D.W.V. Feb. 28, 2013). Moreover, the arguments contained in Blaney's mandamus petition related exclusively to state law and did not include any constitutional claims. (ECF No. 8-2.).

On his direct appeal to the WVSC, Blaney asked the court "to reconsider its ruling ... denying the Petitioner's petition for writ of mandamus," but did not offer any supporting analysis or argument. (ECF No. 22-2 at 19). The WVSC summarily denied Blaney's petition for appeal. (ECF No. 8-6). In his petition for state habeas relief, Blaney again requested that the court "reconsider its ruling ... denying the Petitioner's Petition for Writ of Mandamus," but did not provide any supporting analysis or argument. (ECF No. 8-7 at 33). The state habeas circuit court rejected Blaney's claim as to the proper application of Rule 8(a) of the West Virginia Rules of Criminal Procedure, (ECF No. 8-13 at 37-38), and Blaney failed to raise the issue in his state habeas appeal to the WVSC. (ECF No. 8-14). Blaney now argues that Rule 8(a) of the West Virginia Rules of Criminal Procedure was promulgated "to insure criminal prosecutions do not violate the double jeopardy provisions secured by the 5th Amendment," and that the second indictment "may be indicative of vindictive prosecution." (ECF No. 20 at 8). Although the underlying facts for Blaney's Rule 8(a) claim in state circuit court are the same, it does not appear from the state pleadings that the "controlling legal principles" contained in his constitutional arguments were presented in state court proceedings at any time. *See Pethel v. Ballard*, 617 F.3d 299, 306 (4th Cir. 2010).

Second, Blaney's claim that the joinder of the Second Victim's charges unfairly prejudiced him was also not exhausted in state proceedings. In his Memorandum in Support of his state habeas petition to the circuit court, Blaney did argue that the "inclusion of the charges involving [the Second Victim], of which petitioner was acquitted, prejudiced the jury against the petitioner," in that it "was clearly intend[ed] to bolster the State's weak case" involving the primary Victim. (ECF No. 8-12 at 7). The state habeas circuit court rejected Blaney's claim as to the alleged "spill over" effect of joining the charges of both victims. (ECF No. 8-13 at 37-38). However, Blaney did not raise this issue in his state habeas appeal to the WVSC. (ECF No. 8-14). Because Blaney neither raised this issue on direct appeal, nor in a habeas petition or habeas appeal to the WVSC, this claim has also not been exhausted for the purposes of § 2254.

Nevertheless, Blaney's arguments as to the validity of the second indictment are clearly without merit. Therefore, dismissing or staying the petition to allow Blaney the opportunity to exhaust this ground is a fruitless exercise. *See Rhines*, 544 U.S. at 277-78.

First, Blaney's contention that the second indictment violated the double jeopardy provisions of the Fifth Amendment is factually flawed. As the WVSC emphasized in *State ex. rel. Blaney v. Reed,* 599 S.E.2d 643, 648 (2005), the failure of a prosecutor to join "two or more offenses committed within the same county and which are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, whether felonies or misdemeanors" will result in a bar to the subsequent prosecution of an omitted charge "only if jeopardy attached to any of the offenses in the initial prosecution." Here, Blaney was never tried on the first indictment, and a jury was never impaneled and sworn. Accordingly, jeopardy never attached to the initial charges.

Similarly, Blaney's allegation that the second indictment was "indicative" of a "vindictive prosecution" is entirely without a factual basis. Generally, decisions to prosecute carry a "presumption of regularity." *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Accordingly, to establish a claim of vindictive prosecution, the defendant must show through objective evidence that "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Johnson,* 325 F.3d 205, 210 (4th Cir. 2003), *cert. denied,* 540 U.S. 897, 124 S.Ct. 257, 157 L.Ed.2d 176 (2003) (quoting *United States v. Wilson,* 262 F.3d 305, 314 (4th Cir. 2001)). In this case, the record is devoid of objective evidence to support such a claim. Blaney complains that the prosecutor "did not ascertain with due diligence the number or scope of the crimes attributed to petitioner before seeking the first indictment," (ECF No. 20 at 8); but, even if true, this statement falls far short of establishing prosecutorial animus toward Blaney.

Finally, Blaney argues that the joinder of charges regarding the Second Victim was designed to bolster the State's weak case against him and was therefore prejudicial to a fair trial. In *United States v. Lane,* the United States Supreme Court held that "[i]mproper joinder does not, in itself, violate the Constitution." 474 U.S. 438, 446 n.8, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Instead, misjoinder rises "to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.* Thus, to constitute actual prejudice, the joinder must have had "a substantial or injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 784, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (quoting *Brecht v. Ambrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d

353 (1993)). Once again, the evidence before the court does not factually support Blaney's argument. The trial transcript indicates that evidence was admitted to support each of the charges against Blaney, including the testimony of the alleged victims. Clearly, the jury carefully considered each charge and acquitted Blaney of five counts of the indictment, including three counts involving the Second Victim and two counts involving the Victim. Consequently, Blaney has failed to provide any evidence suggesting that the jury was improperly influenced by the joinder of charges or that he was denied a fair trial.

Accordingly, the undersigned **PROPOSES** that the District Court **FIND** that Blaney has not exhausted his claims relating to the validity of his second indictment. However, because the claims are plainly without merit, Blaney's federal petition should not be stayed to allow him to exhaust his remedies. Instead, the undersigned **RECOMMENDS** that the fifth ground of Blaney's petition be summarily dismissed.

## V.   <u>Discussion of Remaining Claims</u>

### A.   Definition of "Custodian"

With respect to his five convictions for Sexual Abuse by a Custodian, Blaney insists that he did not qualify as a custodian under W.Va. Code §§ 61-8D-1, 61-8D-5. (ECF No. 2 at 3-4, 8-9). According to Blaney, as a teacher's aide, he was only "responsible for the care of one single male special needs student," who was not the Victim. (*Id.* at 4). Thus, Blaney reasons that he was not a custodian of the Victim because she "was not in [his] care, custody, or control" at any time during the alleged offenses. (*Id.*). Additionally, Blaney argues that under W. Va. Code § 18A-5-1(a), "the driver of the school bus is the sole custodian of all students being transported on his or her bus," and therefore he was not the Victim's custodian at any time while on the

school bus. (*Id.* at 8). Accordingly, Blaney raises two related grounds for federal habeas relief: (1) that under W. Va. Code § 18A-5-1, Blaney was not a custodian of any student while on the school bus. (ECF No. 2 at 8); and (2) that the trial court's failure to provide a jury instruction including W. Va. Code § 18A-5-1 violated his right to due process of law because the State was relieved of its duty, and indeed failed, to prove beyond a reasonable doubt an essential element of the offense, namely his status of a custodian. (ECF Nos. 2 at 3; 20 at 5-6).

For the purposes of the criminal statute prohibiting Sexual Abuse by a Custodian, W. Va. Code § 61-8D-5, a "custodian" is defined as:

> [A] person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding. "Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian.

W. Va. Code § 61-8D-1(4). This definition of a custodian applies throughout W. Va. Code Ch. 61, Article 8D. W. Va. Code § 61-8D-1.

Chapter 18A, Article 5 of the West Virginia Code relates to education law and the authority of school personnel to discipline students.  Under W. Va. Code § 18A-5-1(a):

> The teacher shall stand in the place of the parent(s), guardian(s) or custodian(s) in exercising authority over the school and has control of all students enrolled in the school from the time they reach the school until they have returned to their respective homes, except that where transportation of students is provided, the driver in charge of the school bus or other mode of transportation shall exercise such authority and control over the students while they are in transit to and from the school.

W. Va. Code § 18A-5-1(a). Blaney interprets this statutory provision to mean that "[o]n a school bus, state law makes the bus driver, not any adult present, the custodian of all

students on the bus," and reasons that because he was a teacher's aide, rather than a teacher or a bus driver, he lacked authority and control over the students by operation of state law. (ECF No. 2 at 4).

However, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)). The Supreme Court explicitly reemphasized in *Estelle,* "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 67-68. Consequently, as Respondent points out, Blaney's argument that the state courts committed errors of state law in their interpretation of the statutory term "custodian" may not serve as the basis for federal habeas relief. *See Jones v. Catoe*, 9 F. App'x 245, 250 (4th Cir. 2001) (distinguishing between review of state interpretation of state law and review for unconstitutional state errors of state law).

Furthermore, there is nothing contained anywhere in the West Virginia statutory scheme, nor has Blaney offered any compelling authority, from which to conclude that § 18A-5-1(a) was intended to modify, qualify, or otherwise inform the statutory definition of a "custodian" for criminal purposes under W. Va. Code § 61-8D-1. Accordingly, there is no basis to conclude that the State was unconstitutionally relieved of its duty to prove that Blaney was a "custodian" under state law notwithstanding the state education statute.

Blaney cites to *West Virginia Department of Human Services v. Boley*, 358 S.E.2d 438 (W. Va. 1987), arguing that "[i]f a teacher is not a custodian under state law

then a teacher's aide cannot be a custodian." (ECF No. 20 at 5 n.1). There, the West Virginia Department of Human Services (DHS) sought to subject a teacher to removal proceedings under the state's child neglect and abuse statute, W. Va. Code § 49-6-1 (1987) (procedure for instituting proceedings against a legal parent or other custodian), for alleged abuse of students in her classroom. *West Virginia Dep't of Hum. Servs. v. Boley*, 358 S.E.2d 438, 439 (W. Va. 1987). No express language in the statute placed teachers "within the purview of the statute," but DHS argued that the teacher satisfied the definition of a "custodian" under W.V. Code § 49-1-5(5) (1987), relating generally to child welfare services, and could therefore be subject to removal proceedings. *Id.* The WVSC expressed "substantial doubt that a teacher is a 'custodian' under [the state] child neglect and abuse statute," which contemplated a custodian as being "freely chosen by the children's parents." *Id.* at 440. However, Blaney misinterprets *Boley*. The fact that the state court in *Boley* found that teachers did not qualify as custodians for the purpose of child abuse and neglect proceedings, is inapposite to Blaney's circumstance, as child welfare falls within an entirely separate statutory scheme unrelated to the criminal statute under which he was convicted.

DHS also argued in *Boley* that W. Va. Code § 18A-5-1 "demonstrates that the legislature intended to bring teachers within the child abuse and neglect statute." *Id.* The WVSC also rejected this argument, observing that "the statute which incorporated the *in loco parentis* doctrine is unrelated to and perhaps inconsistent with the concepts underlying our child neglect and abuse statute," given that its purpose "was to enable the school authorities to discipline school children." *Id.* W. Va. Code § 18A-5-1 is likewise unrelated to the concepts underlying the criminal statute prohibiting Sexual Abuse of a Custodian. In fact, rather than supporting Blaney's claim that W. Va. Code §

18A-5-1 precludes him from being a custodian under W. Va. Code § 61-8D-1, *Boley* appears to reinforce the state habeas court's determination that "how the Legislature chooses to define and limit the duties and responsibilities of the various personnel who are involved in the educational system of the various counties in this state should in no way affect whether someone commits a crime" under W. Va. Code § 61-8D-5. (ECF No. 8-13 at 20).

Clearly, Blaney's convictions for Sexual Abuse by a Custodian are not invalid by operation of the provisions contained in W. Va. Code Ch. 18A, which have no bearing on the criminal definition of a custodian under W. Va. Code § 61-8D-1. Likewise, the trial court was not required to give a jury instruction that included the language of W. Va. Code § 18A-5-1. As the state habeas court explained:

> The Petitioner was charged with violating a criminal statute, not a school law statute. The trial in this matter was not an employment case. The Petitioner has not alleged to have acted inappropriately with regard to his duties and responsibilities as an employee of the school board, the Petitioner was alleged to have violated the criminal laws of this state. Therefore, how the Legislature chooses to define and limit the duties and responsibilities of the various personnel who are involved in the educational system of the various counties in this state should in no way affect whether someone commits a crime.

(ECF No. 8-13 at 20). In this regard, Blaney has failed to demonstrate that the prosecutor was unconstitutionally relieved from proving beyond a reasonable doubt the essential "custodian" element of the relevant offenses.

Moreover, Blaney concedes that the jury was instructed as to the definition of a custodian under W. Va. Code § 61-8D-1, and subsequently found him to be a custodian in relation to the Victim. (ECF No. 20 at 18). Indeed, at trial Blaney testified that while working as a teacher's aide, he had authority to write passes for students to leave class and come his study hall, that he presided over study hall while the teacher was on lunch

break, that he had agreed to take on "lunch duty" and watch students on the tennis courts during lunch, and that he wrote up behavior observations on students other than the one in his specific charge. (ECF No. 22-1 at 335-97). Additionally, the assistant principal at the time of the incidents testified that Blaney's "primary responsibility was with the one student; however, he did, you know, with all employees, teachers, aids, cooks, they had responsibility of being in charge and helping with students at the school" and that Blaney "would have the same ability as any other teacher, as far as making sure kids were – if they were out of line, disciplining them, handling – you know, if a student needed a pass slip to go from room to room, just like the secretary's aides, teachers, would be responsible to help with that." (*Id.* at 317-18). The assistant principal also testified that he and all staff members, including teacher's aides, were responsible for the care and control of all students in attendance at school, and that while at school, the students were under his custody "as well as all staff members, whoever they're with at that time." (*Id.* at 318-19).

After thoroughly considering the matter, the undersigned **PROPOSES** that the District Court **FIND** that Blaney has failed to establish that (1) the state court's affirmation of Blaney's convictions for Sexual Abuse by a Custodian; and (2) the state court's instruction as to the term "custodian" under W. Va. Code § 61-8D-1 were objectively unreasonable applications of, or contrary to, clearly established federal law. Accordingly, the undersigned **RECOMMENDS** that Respondent be granted summary judgment on grounds one and four of the petition.

## B. Propriety of the *Allen* Instruction

Blaney argues that the trial judge gave an improper *Allen* instruction to the jury, and as a result the jury was coerced into returning the guilty verdicts against him. (ECF

No. 2 at 5). The jury trial lasted four days, between April 12 and April 15, 2005. The jury deliberated for approximately 6½ hours, and then communicated to the trial court by way of a note, stating that:

> We have reached a decision on three counts. We are deadlocked on the remaining counts. How long do you wish for us to continue, understanding that we seem to be unable to reach a unanimous decision?

(ECF Nos. 2 at 5; 22-1 at 507). Over Blaney's objection, the trial judge gave the following modified *Allen* instruction to the jury:

> Ladies and gentlemen of the jury, the issues which you have been – which you have before you will have to be decided by another jury in the event you are unable to agree. You were selected in the same manner and from the same source from which any future jury must be selected, and there is no reason to believe that the case can ever be submitted to twelve men or women more intelligent, more impartial, or more competent to decide it. The Court has no reason to believe that the case can again be tried any better or more exhaustively on either side.
>
> No juror should surrender his or her conscientious convictions based upon the law and the evidence as to what the verdict should be merely for the sake of reaching a unanimous agreement, as any verdict reached must be that of each individual juror and not a mere acquiescence in the conclusion of his or her fellow jurors. But it is the duty of the jury to reach a verdict, if it can be done, without sacrifice of conscientious convictions.
>
> The jury room is no place for pride of opinion or stubbornness, and it is the duty of the jurors to discuss the evidence with each other in the spirit of candor and fairness and with open minds, and each juror should give careful consideration and listen with a disposition to be convinced to the view of his or her fellow jurors. No juror should enter the jury room with blind determination that the opinion then held by him or her should be the verdict of the jury.
>
> Ladies and gentlemen, with these thoughts in mind, you are asked to resume your deliberation and endeavor to agree upon a verdict.

(ECF No. 22-1 at 509-11). Blaney alleges that within twenty minutes of the trial court's *Allen* instruction, the jury had reached a verdict as to all outstanding counts. (ECF No. 2

at 5).[4]

On direct appeal, Blaney argued that the trial court's *Allen* instruction was "improper in that it indicated there would be a retrial of the defendant and therefore was coercive." (ECF No. 22-2 at 13). However, the WVSC summarily denied Blaney's petition for appeal. (ECF No. 8-6). Although Blaney suggests that his claim was not adjudicated on the merits by the WVSC, "the phrase 'adjudication on the merits' in Section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." *Thomas v. Taylor*, 170 F.3d 466, 475 (4th Cir. 1999); *Fisher v. Lee*, 215 F.3d 438, 446 (4th Cir. 2000); *Wright v. Angelone,* 151 F.3d 151, 156-57 (4th Cir. 1998); *see also Sizemore v. Rubenstein*, No. Civ.A. 5:05-cv-00241, 2006 WL 709220, at *11-12 (S.D.W.Va. Mar. 20, 2006) (finding West Virginia Supreme Court's summary denial of direct appeal to be an adjudication on the merits for purposes of § 2254(d)); *Mollohan v. McBride*, No. Civ.A. 2:04-1021, 2006 WL 660870, at *10 (S.D.W.Va. Mar. 15, 2006) (same). The Fourth Circuit has explained that:

> When the state court fails to articulate the rationale behind its ruling, we must independently review the record and the applicable law. However, this independent review of the record and applicable law must be distinguished from a de novo review of the petitioner's claims and from a requirement that we make an independent determination on the merits of those claims.

*Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000). Thus, the appropriate inquiry is whether the *result* of the state court's summary decision satisfies the § 2254(d) standard. *Id.*; *see also Hill v. Ozmint*, 339 F.3d 187, 197 (4th Cir. 2003) (applying *Bell* standard to summary decisions on direct appeal); *Kasi v. Angelone*, 300 F.3d 487, 503

---

[4] In his Petition for Appeal to the West Virginia Supreme Court of Appeals, Blaney alleged that the verdict came "within two hours after the *Allen* charge was given," as opposed to twenty minutes. (ECF No. 22-2 at 16). The trial transcript does not specify the length of jury deliberations.

(4th Cir. 2002) (applying *Bell* where the Virginia supreme court summarily dismissed the petitioner's claim on direct appeal); *Godeke v. McBride*, No. 5:05-cv-00554, 2007 WL 2874970, at *16 (S.D.W.V. Sept. 28, 2007).

A so-called *Allen* instruction is a jury instruction that a trial judge may issue to a deadlocked jury in order to encourage the jury to reach a unanimous verdict. *See Allen v. United States*, 164 U.S. 492, 501-02, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The *Allen* instruction is generally used "to inform jurors that there is no reason to believe another jury would be better able to decide the case, that it is important that a unanimous verdict be reached, and that all jurors should consider the opinions of jurors who favor a different result." *United States v. Rosado*, 452 F. App'x 255, 256 (4th Cir. 2011). The Supreme Court of the United States has continued to affirm the constitutionality of the use of *Allen* instructions, unless "in its context and under all the circumstances the judge's statement" had a coercive effect on the jury. *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); *see also Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). Relevant factors in determining whether an *Allen* instruction is coercive include:

> the charge in its entirety and in context; suggestions or threats that the jury would be kept until unanimity is reached; suggestions or commands that the jury must agree; indications that the trial court knew the numerical division of the jury; indications that the charge was directed at the minority; the length of deliberations following the charge; the total length of deliberations; whether the jury requested additional instruction; and other indications of coercion.

*Tucker v. Catoe*, 221 F.3d 600, 611 (4th Cir. 2000); *see also Booth-El v. Nuth*, 288 F.3d 571, 582 (4th Cir. 2002).

Here, Respondent concedes that it was improper for the trial court to "direct the

jury's attention to potential post-trial consequences if they did not reach a verdict," (ECF No. 9 at 18), but argues that this error was harmless because "[t]here is no evidence that it was" coercive. (*Id.* at 20-21). While a brief period of deliberation between the trial court's issuance of the *Allen* instruction and the jury's arrival at a verdict may "suggest[] the possibility of coercion," *Lowenfield*, 484 U.S. at 240 (citing *United States v. United States Gypsum Co.*, 438 U.S. 422, 438, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1987)), other indicia of coercion are plainly lacking in Blaney's case. Although the trial court reminded the jury of its duty "to reach a verdict, if it can be done, without sacrifice of conscientious convictions," the court did not command the jury to reach an agreement. Furthermore, the trial court's instruction was in response to the jury's inquiry as to how much longer they should deliberate. Additionally, the instruction provided by the trial court did not suggest that the jury would be held until a verdict was reached, Blaney has not alleged that the trial court was aware of the division of the jury, and the instruction was directed toward "each juror" rather than those in the minority. In light of the foregoing, the undersigned simply cannot conclude that the WVSC's decision to reject Blaney's claim of jury coercion was unreasonable or contrary to federal law.

Having thoroughly considered the matter, the undersigned **PROPOSES** that the District Court **FIND** that Blaney has failed to establish that the state court's denial of his claim of jury coercion was an objectively unreasonable application of, or contrary to, clearly established federal law. Accordingly, the undersigned **RECOMMENDS** that Respondent be granted summary judgment on ground two of the petition.

### C.   Weight and Sufficiency of the Evidence

Blaney challenges the weight and sufficiency of the evidence against him, arguing that (1) the jury's guilty verdict on counts 7, 8, 10 and 11 was "against the weight of the

evidence" because "all of the allegations are uncorroborated, inconsistent, and the result of deception by an investigator from the Department of Health and Human Services." (ECF No. 2 at6- 7); (2) the statute of limitations on misdemeanor offenses expired before the indictment as to counts 7 and 10. (ECF No. 20 at 13); and (3) the prosecution failed to present any evidence, including adequate Victim testimony, establishing that any "sexual contact" occurred.[5] (*Id.* at 13-15). Claims of insufficient evidence brought under § 2254 "are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012). First, on direct review the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). As the Supreme Court of the United States has explained, "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts of the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Second, on habeas review under § 2254, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court," but instead "may do so only if the state court decision was 'objectively unreasonable.'" *Coleman,* 132 S.Ct. at 2062  (quoting *Cavazos v. Smith*, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011)).

### 1.  *Weight of the Evidence*

Blaney first argues that his convictions on counts 7, 8, 10 and 11 were "against the

---

[5] Blaney also argues, as to counts 2, 4, 6, 8, and 11, that the testimonies of both the vice principal and the Victim were insufficient to establish that Blaney was a custodian. (ECF No. 20 at 16-17). However, the crux of his argument is that he does not satisfy the statutory definition of a "custodian" in light of the state education statutes. (*Id.*). As discussed above, this argument is unavailing. *See* Part IV.A.

weight of the evidence." (ECF No. 2 at 6). Blaney points to the Victim's testimony on cross examination in which she admitted that she had repeatedly denied any inappropriate conduct to investigators, until an investigator falsely informed her during an interview that Blaney had confessed. (ECF No. 22-1 at 216-18). Blaney now argues that the Victim's allegations and direct examination were "uncorroborated, inconsistent, and the result of deception by an investigator from the Department of Health and Human Services." (ECF No. 2 at 7). Blaney essentially disagrees with the jury's determination of the Victim's credibility and asks this Court to invalidate his convictions on that ground. However, as the state habeas court properly observed, "[c]redibility determinations are for a jury and not an appellate court." (ECF No. 8-13 at 27). Even allowing for the deficiencies that Blaney attributes to the Victim's testimony, a rational fact finder could have could have deemed the Victim to be credible and relied upon her testimony on direct examination in determining that Blaney engaged in the conduct alleged in the indictment. In this regard, the state habeas court's decision rejecting Blaneys' claim of insufficient evidence was neither contrary to nor an unreasonable application of federal law.

### 2.  Statute of Limitations

Blaney next argues that counts 7 and 10 "should have been dismissed" because the date of alleged conduct falls outside of the statute of limitations for misdemeanors. (ECF No. 20 at 13). Under W. Va. Code § 61-11-9, a "prosecution for a misdemeanor shall be commenced within one year after the offense was committed." Blaney was indicted on August 25, 2003, and both charges allege that the relevant conduct occurred between August 2002 and May 2003. (ECF No. 8-3 at 4, 5). Blaney now argues that because "August 1, 2002 to August 24, 2002 falls outside the lawful indictment period,

these counts should have been dismissed." (ECF No. 20 at 13). However, it does not appear that Blaney has exhausted this claim in state court. *See* 28 U.S.C. 2254(b)(1)(A).

During a pre-trial hearing, Blaney's apparently "alleged that theoretically [the] indictment was outside the statute," but the state trial court ruled that it "was a matter of trial proof" whether the misdemeanor counts were outside the statute of limitations. (ECF No. 22-1 at 324). In contrast, counts 1, 3, and 5 were dismissed prior to trial, as they involved a period of time between February 2002 and June 2002, which fell entirely outside of the statute of limitations, given the indictment date of August 25, 2003. (ECF No. 8-3).

At trial, Blaney moved to dismiss counts 14, 16, and 18 as outside of the statute of limitations, which the trial court granted. (*Id.*). Blaney did not raise the statute of limitations as a defense on counts 7 and 10, nor did he raise the issue on direct appeal, in state habeas proceedings before the state circuit court, or on state habeas appeal before the state supreme court. (ECF Nos. 8-7, 8-8, 8-9, 8-10, 8-12, 8-14, 22-2). Although Respondent has not explicitly raised exhaustion as a defense to the issue of whether counts 7 and 10 should have been dismissed due to the statute of limitations, it is evident that Blaney did not exhaust this claim in any state court proceeding. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").

However, Blaney is now procedurally barred from raising the issue in a subsequent state action, s*ee* W. Va. Code § 53-4A-1 et seq. (stating that a claim "shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance" such claim in a prior state habeas petition); *Losh v.*

*McKenzie*, 277 S.E.2d 606, 610-12 (W. Va. 1981) (describing comprehensive procedure for effectuating waiver of state habeas claims), because he validly waived all claims not presented in his state habeas proceeding. (ECF No. 8-1 at 61-72). Therefore, pursuant to the doctrine of "procedural default," this claim is unreviewable by the federal district court. *See House v. Bell*, 547 U.S. 518, 521, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) ("Out of respect for the finality of state-court judgments federal habeas courts, as a general rule, are closed to claims that state courts would consider defaulted."); *Burket v. Angelone*, 208 F.3d 172, 183 n.11 (4th Cir. 2000) ("A procedural default occurs when the petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would not find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Beard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Although procedural default may be excused by demonstrating "cause and prejudice" or a "miscarriage of justice," *House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Dretke v. Haley*, 541 U.S. 386, 388, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004), Blaney has made no effort to make the requisite showing under either exception.

### 3.  Evidence of "Sexual Contact"

Blaney argues that the State's evidence at trial was insufficient to establish that he engaged in the requisite "sexual contact" necessary to convict him of the offenses charged in the indictment. (ECF No. 20 at 13-18).

First, with respect to counts 6, 7, and 8, Blaney argues that because the indictment alleged that he subjected the Victim to  "sexual contact by intentionally touching [her] vagina above her clothing," the State was required to prove that Blaney in

fact touched the Victim's vagina,[6] (*Id.* at 13-14), rather than merely engaging in "sexual contact," which includes "intentional touching, either directly or through clothing, of the breasts, buttocks, anus or any part of the sex organs of another person." W. Va. Code § 61-8B-1(6). Blaney now argues that the vagina consists only of "an internal genital area as opposed to an external genital area." (*Id.* at 14). He therefore insists that touching the Victim's vagina "cannot have been achieved without penetration ... which the victim in this case does not describe and is virtually impossible to achieve over clothing." (*Id.* at 13).

The state habeas court held that "although the indictment and jury instructions do reference the term 'vagina,' "the statute makes clear, and the jury was instructed, that 'sexual contact' means any intentional touching of any part of the sex organ." (ECF No. 8-13 at 40). The state habeas court further found that the State, having chosen to charge more narrowly that Blaney had touched the Victim's vagina, had provided sufficient evidence for the jury to convict Blaney. (*Id.*). Specifically, the Victim had testified "that while on the school bus on her way home [Blaney] would rub her leg and placed his hand between her legs and over her vagina," and "that that during her eighth grade year while in Room 113 [Blaney] would rub her leg and touch her between the legs." (ECF No. 8-13 at 31, 33). In finding there was sufficient evidence to support the contested convictions, the state habeas court apparently did not adopt Blaney's narrow conception of the "vagina" as consisting only of the internal organ, but also included the external area which could be touched through the Victim's clothing. Although Blaney couches his

---

[6] In count 6 of the indictment, Blaney was charged with "intentionally touching [the Victim's] vagina above her clothing while on a Wood County School Bus." (ECF No. 8-3 at 4). In counts 7 and 8, Blaney was charged with "intentionally touching [the Victim's] vagina above her clothing while in a room at Williamstown High School." (*Id.* at 4-5). Blaney also attempts to raise this claim with respect to count 9. (ECF No. 20 at 13). However, count 9 alleges that Blaney "unlawfully attempt[ed] to subject [the Victim to sexual contact ... by intentionally attempting to touch [her] vagina by trying to stick his hands inside the pants of [the Victim] while at [her] residence." (ECF No. 8-3 at 5).

argument in terms of the "sufficiency of the evidence," it is evident that his claim hinges on his interpretation of the term "vagina" as it relates to the West Virginia criminal statute. However, "it is beyond the mandate of federal habeas courts to correct the interpretation by state courts of a state's own laws." *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) (quoting *Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010)); *see also Estelle*, 502 U.S. at 67-68.

Second, with regard to counts 7 and 8, Blaney argues that the Victim's testimony that he would rub her leg and touch her "between the legs" was insufficient to establish that he touched her vagina. (ECF No. 20 at 13-14). At trial, Blaney raised the same issue immediately after the State rested its case. (ECF No. 22-1 at 331). The trial court held that "given the context of this case and the previous testimony [of the Victim]," her testimony as to counts 7 and 8 was sufficient for the jury to prove the element of sexual contact beyond a reasonable doubt. (*Id.* at 330-32). The state habeas court again found that there was sufficient evidence to convict on counts 7 and 8, given the Victim's testimony "that during her eighth grade year while in Room 113 [Blaney] would rub her leg and touch her between the legs." (ECF No. 8-13 at 33).

The state court's determination that there was sufficient evidence to convict Blaney on counts 7 and 8 was not unreasonable or contrary to federal law. At trial, the Victim testified as to counts 7 and 8 that on one occasion, while alone with Blaney in Room 113 during her eighth grade year, Blaney "would rub my leg and touch me" and that he touched her "between the legs." (ECF No. 22-1 at 174). At this point, the Victim had already testified as to counts 5 and 6, that on a prior occasion, while riding the bus during her seventh grade year, Blaney "would rub my leg, and I had a short skirt on and he placed his hand between my legs," and further that Blaney placed his hand over her

vagina, and that she could feel his hand on her sex organ. (*Id.* at 155-56). The Victim had also testified as to count 9, that Blaney kissed her on multiple occasions while alone in her apartment during the fall semester of 2002, and that on one occasion he slipped his fingertips inside of her shorts and underwear. (*Id.* at 163-66). Given the context of the Victim's testimony and her prior statements relating to similar conduct, the state habeas court appropriately determined that a reasonable jury, drawing all inferences in favor of the State, could have relied upon the Victim's testimony that Blaney touched her "between the legs" in the classroom, to find beyond a reasonable doubt that the requisite "sexual contact" occurred as to counts 7 and 8.

Third, regarding counts 2, 4, 10, and 11, which charge Blaney with "intentionally placing [the Victim's] hand on Jerome M. Blaney's penis above his clothing," Blaney argues that the State failed to present any evidence of sexual contact. (ECF No. 20 at 15-16). According to Blaney, "sexual contact" as defined by the relevant statute, only occurs when the accused "touches another person's sexual organ." (*Id.* at 15). Thus, he argues that the Victim's testimony, which "establishes only that [Blaney] touched her hand but not her sex organ" was insufficient to establish that he engaged in the requisite sexual contact necessary for conviction. Notwithstanding the fact that Blaney again calls upon the Court to correct the state court's interpretation of a state statute, *see Estelle*, 502 U.S. at 67-68; *Richardson*, 668 F.3d at 141, Blaney's argument is patently incorrect.

At the time of both the alleged conduct and Blaney's trial, "sexual contact" was defined as:

> any intentional touching, either directly or through clothing, of the anus or any part of the sex organs of another person, or the breasts of a female or *intentional touching of any part of another person's body by the actor's sex organs*, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

W. Va. Code § 61-8B-1(6) (2003) (emphasis added).[7] Thus, the statute makes clear that Blaney's alleged conduct, which consisted of taking the Victim's hand and placing it on his penis, constitutes sexual contact.

At trial, the victim testified as to counts 2 and 4, that on two occasions while riding the school bus, Blaney physically took her hand, guided it to his penis, and placed it on him. (ECF No. 22-1 at 152-54). She later testified as to counts 10 and 11, that on one occasion while alone in Room 113, Blaney, who was standing behind the Victim, took her hands behind her back and put them between his legs. (*Id.* at 174-75). Given the statutory definition of "sexual contact" and Victim's testimony of Blaney's conduct, it was not unreasonable for the state habeas court to find that there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that sexual contact had occurred. (ECF No. 8-13 at 28-30, 35-37).

Having thoroughly considered the matter, the undersigned **PROPOSES** that the District Court **FIND** that Blaney has failed to establish that the state court's denial of his sufficiency of the evidence claim was an objectively unreasonable application of, or contrary to, clearly established federal law. Accordingly, the undersigned **RECOMMENDS** that Respondent be granted summary judgment on ground three of the petition.

### D.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). While "assistance which is ineffective in preserving fairness does not meet the constitutional mandate. . . defects in

---

[7] In 2007, the statute was amended to include "intentional touching . . . of the breasts, buttocks, anus or any part of the sex organs of another person. . ." 2007 W. Va. Acts Ch. 65, H.B. 2498 (eff. June 16, 2007).

assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 694. The lack of a formal record or history of how the charges played out at trial "works against the party alleging inadequate assistance." *Premo v. Moore*, 131 S.Ct. 733, 745, 178 L.Ed.2d 649 (2011). When reviewing counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time," *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

In a § 2254 proceeding, the standard of review differs somewhat from the standard used in the direct review of a *Strickland*-based challenge. *Harrington,* 131 S.Ct. at 785. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem review is 'doubly' so." *Id.* at 788 (internal citations omitted). "'Surmounting *Strickland's* high bar is never an easy task[;]' ... Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* (quoting *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010)). Instead of asking whether defense counsel's performance fell below an objectively reasonable standard, the federal habeas court must determine "what arguments or theories supported, or could have supported the

state-court decision; and then ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with a prior decision of [the United States Supreme] Court." *Id.* at 786. The question, then, is not "whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788. Consequently, a "state court's determination that a [*Strickland*] claim lacks merit **precludes** federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of that decision." *Id.* at 786 (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)) (emphasis added).

Blaney identifies multiple deficiencies in his trial counsel's representation. (ECF Nos. 2 at 10-11; 20 at 20-25). The undersigned addresses the state court's determination with respect to each of his claims.

### 1. *Failure to Inquire About Racial Bias During Voir Dire*

Blaney argues that counsel Albright provided ineffective assistance at trial on the ground that he "made absolutely no effort to question prospective jurors concerning any biases or prejudices they might have toward blacks." (ECF No. 20 at 23).

The state habeas court rejected Blaney's claim of ineffective assistance, observing that "[n]o case has been cited by counsel, or found by the Court where it has been decided that failing to question jurors about race is *per se* ineffective assistance of counsel." (ECF No. 8-13 at 20). In addition to applying the "presumption that counsel's actions were the result of sound trial strategy," (*Id.* at 21), the state habeas court found that "there was no evidence presented to establish that any of the prospective jurors were biased or prejudiced against the Petitioner due to his race." (*Id.*). Accordingly, the state habeas court found that Blaney had failed to demonstrate ineffective assistance.

(*Id.* at 22). Here, Blaney objects to the state habeas court's determination, arguing that "clearly established federal law mandates that a defendant charged with any interracial crime is entitled to have prospective jurors informed of the victim's race and questioned on the subject of racial bias." (ECF No. 20 at 23) (citing *Turner v. Murray*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d at 27 (1986)).

Blaney reads too much into *Turner v. Murray*. There, the defendant was a black man who had been sentenced to death for killing a white man in the course of a jewelry store robbery. *Turner*, 476 U.S. at 29. During voir dire, the trial court declined to ask defense counsel's proposed question as to whether the fact that the defendant was black and the victim was white would "prejudice [the jurors] against [the defendant] or affect [their] ability to render a fair and impartial verdict based solely on the evidence." *Id.* at 30-31). In his federal habeas action, the defendant argued "that the trial judge's refusal to ask prospective jurors about their racial attitudes deprived him of his right to a fair trial." *Id.* at 32. The Supreme Court of the United States held "that a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." *Id.* at 36-37. However, "a defendant cannot complain of a judge's failure to question the venire on racial prejudice unless the defendant has specifically requested such an inquiry." *Id.* at 37. Blaney's case is critically distinguishable from *Turner*, in that he was not a capital defendant. *See Hatfield v. Smith*, 113 F.Supp.2d 862, 866 (W.D.N.C. 2000) ("[W]hen a defendant is sentenced to death, the stakes are enlarged, and thus the constitutional rights proportionately, and a defendant is entitled to inquire into racial prejudice during *voir dire.*").

Blaney also complains that "the jury panel was devoid of any minority members." (ECF No. 20 at 23). However, it is well established that "there is no constitutional presumption of juror bias for or against members of any particular racial or ethnic group, presumably even when a jury pool is predominantly white." *Goins v. Angelone*, 226 F.3d 312, 323 (4th Cir. 2000), abrogated on other grounds by *Bell*, 236 F.3d at 163; *see also Rosales-Lopez v. United States*, 451 U.S. 182, 190, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981) ("There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups. . . [and] there is no *per se* constitutional rule in such circumstances requiring inquiry as to racial prejudice."); *Ristaino v. Ross*, 424 U.S. 589, 596 n.8, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976) (rejecting a per se rule requiring inquiry into potential racial bias). Instead, "the decision to question prospective jurors about racial bias is best left in the hands of trial counsel." *Sexton v. French*, 163 F.3d 874, 886 (4th Cir. 1998); *Spencer v. Murray*, 18 F.3d 229, 234 n.6 (4th Cir. 1999).

During the state habeas evidentiary hearing, Albright specifically testified that he declined to inquire about potential racial bias, stating that:

> I didn't get a sense that [race] was an issue, which voir dire requires a certain feel for the jury, but I also had a black victim, and I feel that you run the risk of doing harm to your client if you get into that subject with jurors. That is a potentially insulting issue, and, in this particular case, based upon what I had seen, I made a decision not to get into the topic. I have rarely done it over the years. I have done it. But in this particular case, I made – I just made the call not to do it.

(ECF No. 8-11 at 15). Furthermore, there is no evidence that race was "inextricably bound up with the conduct of the trial," *see Rosales-Lopez*, 451 U.S. at 190; *Ristaino*, 424 U.S. at 597, as "none of the charges against [the petitioner] involved any element of race; race was not an element of any defense advanced by [the petitioner]; and none of the evidence adduced at trial or during sentencing suggested race as an issue in the

case." *Blakeney v. Lee*, No. 3:05 CV-10-V, 2007 WL 1341456, at *51 (W.D.N.C. May 3, 2007). In light of Albright's testimony to having made a strategic choice not to inquire about race, the undersigned cannot conclude that the state habeas court's rejection of Blaney's argument was contrary to or involved an unreasonable application of federal law.

### 2.  Failure to Notify the Court of a Conflict

In his second claim of ineffective assistance, Blaney argues that Albright "failed to disclose either to petitioner or the court that he was dating Brenda Tebay,[8] [the Victim's] therapist, and, therefore, he failed to cross-examine [the Victim] aggressively." (ECF No. 2 at 10).

"[T]he right to effective assistance includes the right to representation free from conflicts of interest," as "lawyers owe their clients a duty of loyalty, including the duty to avoid conflicts of interest." *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002) (citing *Sullivan*, 446 U.S. at 348-50). To establish ineffective assistance of counsel based upon a conflict of interest, the petitioner must prove that "(1) petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" *United States v. Nicholson*, 611 F.3d 191, 205 (4th Cir. 2010) (quoting *Sullivan*, 446 U.S. at 348). Although "[a]dverse effect cannot be presumed from the mere existence of a conflict of interest," once it is shown, "prejudice will be presumed and the [petitioner] need not demonstrate a reasonable probability that, but for the attorney's conflict of interest, the trial's outcome would have been different." *Rubin*,

---

[8] In the state habeas evidentiary hearing, Albright testified that he had dated Brenda Tebay in 2002 and maybe into 2003, while representing Blaney, but that they had stopped dating prior to Blaney's trial. (ECF No. 8-11 at 19). Albright testified that he became aware that Ms. Tebay had been counseling the Victim while going through discovery on the case. (*Id.*). Albright testified that he never discussed the Victim or any aspect of Blaney's case with Brenda Tebay. (*Id.* at 37).

292 F.3d at 401-02. Instead, "prejudice will be presumed [ ] if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown." *Mickens*, 535 U.S. at 172-73; *Culyer v. Sullivan*, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (holding that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief").

In Blaney's case, the state habeas court found that "absent any citation to the record ... this relationship was not disclosed to either the Petitioner or the [trial] Court." (ECF No. 8-13 at 22). Nevertheless, the state habeas court found that "even if trial counsel failed to disclose to anyone that he was in a relationship with the therapist of [the Victim], that he did adequately cross examine [the Victim] by bring[ing] out prior inconsistent statements, and that [the Victim] had stated on prior occasions that [Blaney] had not touched her inappropriately." (*Id.* at 23). Accordingly, the state habeas court held that Blaney had failed to satisfy the second prong under *Strickland*.

After reviewing the transcript of Albright's cross-examination of the Victim, it is clear that the state habeas court's rejection of Blaney's claim was not unreasonable. As the state habeas court observed, Albright successfully elicited the Victim's testimony that she had repeatedly denied to multiple investigators that any inappropriate touching had occurred. (ECF No. 22-1 at 179-202, 210-32). He also cross-examined the Victim as to why she continued to spend time with Blaney after the first instances of inappropriate touching, (*Id.* at 188-89), the number of times Blaney allegedly visited the Victim in her house, (*Id.* at 210-11), her prior statements to her neighbor friend that nothing inappropriate was going with Blaney, (*Id.* at 220-21), as well as inconsistencies

in her testimony regarding her feelings for Blaney. (*Id.* at 231-32). Significantly, Blaney does not specify any questions or line of inquiry that Albright failed to ask the Victim. There is simply no evidence that Albright's performance was adversely affected by his prior relationship with Brenda Tebay.

### 3.  Failure to Investigate Prior to Trial

Blaney argues that trial counsel provided ineffective assistance of counsel relating to pretrial investigation on grounds that Albright (1) failed to "interview the prospective witnesses whose testimony [Blaney] believed would either refute or call into question the veracity of the [Victim's] narrative." (ECF No. 20 at 21); and (2) failed to "obtain and preview a videotape that showed [Blaney] entering [the Victim's] home." (ECF No. 2 at 10). The state habeas court rejected both claims of ineffective assistance for failure to establish any prejudice as to either purported deficiency. As discussed below, the state habeas court's rejection of both claims was neither unreasonable nor contrary to federal law.

Under *Strickland*, defense counsel's duty to investigate requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 690-91. Although counsel should generally "investigate possible methods for impeaching prosecution witnesses, and in some instances failure to do so may suffice to prove a claim under *Strickland*," the Sixth Amendment "does not always compel counsel to undertake interviews and meeting with potential witnesses where counsel if familiar with the substance of their testimony." *Huffington v. Nuth*, 140 F.3d 572, 580 (4th Cir. 1998). Moreover, "although a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be

mentioned by the defendant does not suggest ineffective assistance." *Id.* at 580. Likewise, defense counsel's "investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities." *Rompilla v. Beard*, 545 U.S. 374, 387, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (quoting 1 ABA Standards for Criminal Justice, 4-4.1 (2d ed. 1982 Supp.). However, a court's review of counsel's decision not to investigate is highly deferential in light of the circumstances at the time of counsel's representation. *Strickland*, 466 U.S. at 691. Moreover, even where counsel could have made a more thorough investigation, the proper inquiry into claims of ineffective assistance is "not what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp,* 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (quoting *United States v. Cronic,* 466 U.S. 648, 665 n.38, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). Thus, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Yarbrough v. Johnson*, 520 F.3d 329, 338 (4th Cir. 2008).

Additionally, in order to succeed on this type of claim, a petitioner must explain what useful evidence would have been obtained from the additional interviews or meetings. *See Bassette v. Thompson,* 915 F.2d 932, 940-41 (4th Cir. 1990) (rejecting petitioner's "general claim that additional witnesses should have been called in mitigation"). In doing so, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with a reasonable probability meaning a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hoots v. Allsbrook*, 785 F.2d 1214, 1220 (4th Cir. 1986).

First, regarding the various potential witnesses whom Albright purportedly failed to interview or call as witnesses, the state habeas court held that "if a petitioner, in a post-conviction habeas corpus, alleges that a witness should have been called during the trial … then the petitioner in the habeas corpus proceeding needs to call the witness or present the evidence in the habeas corpus proceeding." (ECF No. 8-13 at 20). Because neither the student Mat Maids assigned to clean off the wrestling team's mats, nor any other alleged witnesses were called as witnesses during the habeas corpus proceeding, the state court found that "the record is devoid of what those witnesses might have testified about." (*Id.* at 20, 25). Thus, without evaluating the first prong of the *Strickland* standard, the state habeas court rejected Blaney's ineffective assistance claim on the ground that the court could only speculate as to the effect of Albright's alleged failure to investigate and call certain individuals as witnesses. (*Id.*).

The undersigned concludes that the state habeas court's determination was not unreasonable or contrary to federal law. Although Blaney now argues that the Mat Maids "were present in Room 113 every lunch period[] during the school years," he states only generally that he believes their testimony "would either refute or call into question the veracity of [the Victim's] narrative," but does not offer any specific information or testimony that they would have provided at trial, or explain which aspects of the Victim's testimony they might have undermined. (ECF No. 20 at 21). Likewise, Blaney alleges that he "provided Mr. Albright with the names, addresses and phone numbers of sixty to seventy-two prospective witnesses," (*Id.*), but fails to identify any of the prospective witnesses for the Court, or to provide any information as to what their testimony might have been.

Even assuming, as the state habeas court apparently did, that Albright's failure to interview certain prospective witnesses was constitutionally deficient, it was not unreasonable or contrary to federal law for the state habeas court to find that Blaney had not established the second prong under *Strickland*. Given that Blaney failed to identify the content of the potential witnesses' testimony, the state court had no way of discerning whether the potential witnesses were crucial to his defense. The undersigned does note that the Victim testified that both instances of sexual contact in Room 113 occurred while she and Blaney were alone in the room, (ECF No. 22-1 at 173, 175-76), and that her testimony of spending time with Blaney alone in Room 113 was corroborated by her neighbor friend who also testified to finding them alone in Room 113 while the door was locked and the lights were out. (*Id.* at 309). Accordingly, it was not unreasonable for the state habeas court to find that Blaney had failed to demonstrate a reasonable probability that the outcome of the proceeding would have been different had he interviewed and called the Mat Maids or other potential witnesses to testify.

Second, although Blaney alleges that "Albright failed to obtain and preview a videotape that showed [him] entering [the Victim's] home," he offers no supporting argument whatsoever in either his complaint or response as to how this purported deficiency prejudiced the outcome of his trial. (ECF Nos. 2 at 10; 20 at 20-25).

The transcript of state proceedings reflects that at trial, the State played the relevant video footage of Blaney at the Victim's house, which had been taken by the Victim's next door neighbor friend. (ECF No. 22-1 at 305). The footage apparently showed a conversation between the Victim, who was standing at the door of her home, and Blaney who was in his car. He briefly went inside, ostensibly to sign a school photo,

and returned to his car shortly thereafter. (*Id.* at 478). In his closing argument, Albright argued that the video was consistent with Blaney's testimony that he stopped by the Victim's house to give her a school picture. (*Id.*). Because the videotape also contained unrelated footage that the trial court had not been previously made aware of, the trial court instructed the jury that if they wished to review the video, it would need to be done in the courtroom. (*Id.* at 496-98). The jury did not request to see the video footage at any time during deliberations. On state habeas appeal, Blaney argued that "it was incumbent upon [Albright] to have a good useable videotape ready for the jury's convenient use during their deliberation," and as a result of Albright's failure to do so, "in all likelihood the jury avoided [reviewing the footage] due to its cumbersomeness and inconvenience." (ECF No. 8-14 at 20).

The state habeas court observed that "[t]his video was available for the jury to view during their deliberations, they just had to view it in the courtroom as opposed to viewing it in the jury room." (ECF No. 8-13 at 24). Accordingly, the state habeas court found that Blaney had failed to establish that he was prejudiced by Albright's failure to preview or make available the video footage available in a form that the jury could view in the jury room. The undersigned concludes that the state habeas court's rejection of Blaney's claim was not unreasonable or contrary to federal law.

Even assuming, as Blaney argued on state habeas appeal, that Albright's deficient performance likely caused the jury to avoid reviewing the footage due to the "cumbersomeness and inconvenience," it was not unreasonable for the state habeas court to conclude that Blaney had failed to demonstrate prejudice. Even if the jury had been discouraged from reviewing the footage, that alone does not necessarily establish a reasonable probability that the result of the proceeding would have been different.

Although certainly relevant to the case, the video footage did not involve any of the incidents of sexual contact for which Blaney was charged, nor did it definitively bolster Blaney's case. Albright argued that the video was consistent with Blaney's testimony regarding that specific visit. However, it hardly disproved the testimony of the Victim or her two friends regarding the other home visits alleged to have occurred. Indeed, the jury could have concluded that the video bolstered the credibility of the Victim's neighbor friend, who testified that she videotaped Blaney after witnessing him visit the Victim's home on multiple prior occasions. Additionally, the video could have served to reinforce the State's apparent narrative that Blaney and the Victim shared some sort of romantic relationship, particularly as the State argued that the video supported the Victim's testimony about her feelings for Blaney. (ECF No. 22-1 at 455). Given the nature of the video coupled with the fact that it was indeed available for jury review, it was not unreasonable for the state habeas court to determine that Albright's failure to provide a copy of the video for the jury to view in the jury room was insufficient to undermine confidence in the outcome of the trial.

### 4. Deficiencies Based Upon Statutory Interpretation

Blaney raises two claims of ineffective assistance related to arguments of statutory interpretation similar to those raised above. Specifically, Blaney argues that Albright (1) "failed to propose for the [trial] court's consideration a defense jury instruction informing the jury that the bus driver, under applicable state law, is the sole and exclusive custodian of students on his or her bus," and (2) "failed to challenge the indictment, conviction and sentence predicated on the absence of adequate and sufficient proof of penetration." (ECF No. 2 at 10). As discussed above, Blaney's underlying argument that state education law applies to the criminal statutory definition

of a "custodian" is meritless. *See* Part IV.B. Therefore, it was not improper for Albright to fail to propose jury instructions based upon a nonmeritorious legal argument. Likewise, Blaney's argument that the State was required to prove that Blaney penetrated the Victim's vagina is also meritless. *See* Part IV.C.3. Accordingly, it was not improper for Albright to fail to contest the charges alleging that Blaney "intentionally touch[ed] [the Victim's] vagina above her clothing." (ECF No. 8-3). Because Blaney "would receive a windfall as a result of the application of an incorrect legal principle or a defense strategy outside the law," it "would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice.'" *Lafler v. Cooper*, 132 S.Ct. 1376, 1387, 182 L.Ed.2d 398 (2012). He has therefore failed to demonstrate ineffective assistance of counsel.

### 5.  *Other Claims of Ineffective Assistance*

Additionally, Blaney alleges that Albright (1) "did not request the court to ascertain the numerical division of the jurors, or move for a mistrial when he learned the jury was deadlocked on all but three counts." (ECF No. 20 at 22); (2) "failed to challenge the placement of [Juror] Davis" despite the fact that Juror Davis "expressed the opinion that a defendant found guilty of sexual assault of a minor 'should be hung.'" (*Id.* at 24); (3) "failed to challenge placement of [Juror] Thomas, a certified pastoral counselor and therapist," despite the fact that he "possessed knowledge of the dynamics of sexual abuse beyond the scope of the average juror" due to his "choice of occupation and prior experience in counseling sexual abuse victims." (*Id.*); and (4) "did not contest the imposition of 90-day sentences for [the misdemeanor convictions], despite Blaney's belief that the sentences violated W. Va. Code § 61-8B-9. (*Id.* at 24-25). However, none of these claims of ineffective assistance are presented or in any other way addressed in Blaney's § 2254 petition. (ECF No. 2 at 10-11). Instead, Blaney raises these claims for the

first time in his "Reply to Respondent's Motion for Summary Judgment." (ECF No. 20). Because Blaney failed to raise these issues in his initial brief, they are considered waived. *See United States v. Malone*, 442 Fed.App'x 864, 866-67 (4th Cir. 2011); *Gaultney v. Ballard*, No. 1:09-cv-01221, 2012 WL 6044412, at *2 (S.D.W.V. Dec. 5, 2012) (collecting § 2254 cases); *Abido v. Ballard*, Civil Action No. 2:08-cv-00341, at *2 (S.D.W.V. Mar. 18, 2009).

Having thoroughly considered the matter, the undersigned **RECOMMENDS** that the District Court **FIND** that the state courts' determination that Blaney failed to establish ineffective assistance of counsel was not an objectively unreasonable application of, nor contrary to, clearly established federal law. Likewise, the state courts' findings were not based upon an unreasonable determination of the facts in light of the evidence submitted in the state court proceedings. Accordingly, the undersigned **PROPOSES** that Respondent be granted summary judgment on this ground.

## VI.    <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1. Respondent's Motion for Summary Judgment (ECF No. 8) be **GRANTED**;

2. Petitioner's Petition for a Writ of Habeas Corpus by a Person in State Custody (ECF No. 2) be **DENIED**; and

3. That this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure,

Petitioner shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and any counsel of record.

**FILED:** February 6, 2014

Cheryl A. Eifert
United States Magistrate Judge